## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| MICHAEL FALLINE on behalf of himself and all others similarly situated,<br><br>     Plaintiff,<br><br>       v.<br><br>CORECIVIC OF TENNESSEE, LLC; and DOES 1-50,<br><br>     Defendant. | Case No.: 2:21-cv-01802-CDS-BNW<br><br>District Judge: Hon. Cristina D. Silva |
| ANTHONY TURNER on behalf of himself and all others similarly situated,<br><br>     Plaintiff,<br><br>       v.<br><br>CORECIVIC OF TENNESSEE, LLC; and DOES 1-50,<br><br>     Defendant. | |

## UNOPPOSED MOTION FOR APPROVAL OF
## FAIR LABOR STANDARDS ACT COLLECTIVE ACTION SETTLEMENT

Plaintiffs Michael Falline and Anthony Turner, by and through counsel, files this Unopposed Motion for Approval of Fair Labor Standards Act ("FLSA") Collective Action Settlement. In support, Plaintiffs respectfully states as follows:

### I.    INTRODUCTION

Representative Plaintiffs Michael Falline and Anthony Turner respectfully move for approval of the proposed FLSA opt-in Settlement reached by the Parties and memorialized in the Settlement Agreement and Release ("Settlement" or "Agreement") attached as Exhibit A. The proposed Settlement will resolve bona fide disputes involving overtime compensation claims

under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219, as well as state law claims. If approved, the Settlement will provide for the issuance of notice to all individuals who worked for CoreCivic as Correctional Officers, Senior Correctional Officers, Detention Officers, or Senior Detention Officers for Defendant who worked in Nevada during at least one week beginning three years before the filing of the Complaint (i.e., September 29, 2018), and ending on September 2, 2022 ("Eligible Settlement Participants") within 28 days of approval by this Court. Eligible Settlement Participants will have 60 days to join the Settlement by executing and returning Consent and Release Forms.  Because the proposed Settlement is an FLSA opt-in settlement, as opposed to a Rule 23 opt-out settlement that would bind absent class members, no fairness hearing is required or requested by the Parties.[1] The Parties respectfully submit that the proposed Settlement is fair and reasonable and satisfies the criteria for approval under § 216(b) of the FLSA. The Settlement was achieved during arms-length negotiations among the Parties, conducted by experienced counsel and an experienced mediator. If approved, the Settlement will make settlement payments available to the Eligible Settlement Participants who elect to participate in the Settlement. Those who do not elect to participate in the Settlement will not be included or release their claims.

The settlement documents submitted for approval consist of the following:

Exhibit 1:      Settlement Agreement and Release;

Exhibit 1A:    Allocation of Settlement Payments to Individual Eligible Settlement Participants

---

[1] *See Moore v. Ackerman Inv. Co*., C 07-3058-MWB, 2009 WL 2848858 (N.D. Iowa Sept. 1, 2009) ("Section 216(b) does not expressly require a 'fairness' hearing on a proposed settlement, as Rule 23 of the Federal Rules of Civil Procedure does for class actions pursuant to that rule, and Rule 23 requirements are not directly applicable to a collective action pursuant to § 216(b)."); *McLean v. HSM Elec. Prot. Services, Inc*., 607CV1680ORL28DAB, 2008 WL 4642270 (M.D. Fla. Oct. 8, 2008) (same); *Barnes v. Benzerenterprises, Inc*., 607CV1754-ORL-22DAB, 2008 WL 4059839, (M.D. Fla. Aug. 27, 2008) ("the Court determines that there is no need for a fairness hearing").

Exhibit 1B:    Notice of Settlement

Exhibit 1C:    Claim Form

Exhibit 1D:    Proposed Order Granting Plaintiffs' Unopposed Motion for Approval of Settlement

Exhibit 1E:    Stipulation of Dismissal

The following sections explain the nature of the Action, the negotiations, the principal terms of the Settlement, and the propriety of approving the Settlement and its proposed distributions of settlement proceeds.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    <u>The Action</u>

On September 29, 2021, Representative Plaintiff Michael Falline filed this lawsuit against Defendant CoreCivic of Tennessee, LLC ("Defendant") based on alleged off-the-clock work performed by Plaintiff and other non-exempt Correctional Officers and Detention Officers. (Dkt. 1.) On April 22, 2022, Representative Plaintiff Anthony Turner filed a substantially similar action against Defendant on behalf of the same group of employees, which was removed to this Court on May 16, 2022. (*See* Case No. 2:22-cv-00775, Dkt. 1.) Because both actions involve common questions of law and fact concerning allegations brought against the same Defendant and share common central allegations, Plaintiffs filed a motion to consolidate the two cases (Dkt. 32), which this Honorable Court granted on July 27, 2023 (Dkt. 33). In both cases (together referred to as "the Civil Action"), the central allegation was that Plaintiffs and other Correctional Officers and Detention Officers in Nevada were denied pay for the time they spent undergoing security screenings prior to the start of their shifts. Plaintiffs allege that they and other Correctional Officers and Detention Officers were required to undergo security screenings conducted on Defendant premises, and that the security screenings were integral and indispensable to their principal

activity. The Plaintiffs sought, *inter alia*, unpaid overtime wages for all hours worked over 40 in a week, liquidated damages, penalties, interest, attorney's fees, expenses, and costs.

Defendant denied the allegations in the Civil Action. Instead, Defendant contends, *inter alia*, that time engaged in security screenings is not a compensable work activity, and that Named Plaintiffs and the Eligible Settlement Participants were appropriately paid for all hours worked.

**B.    Negotiation of the Settlement**

Prior to negotiating the Settlement, the Parties informally engaged in a comprehensive exchange of significant information regarding Plaintiffs' claims and Defendant's defenses. Defendant provided Plaintiffs' Counsel data and information necessary to create a damages model, including time and pay records for Plaintiffs and a representative sampling of the Eligible Settlement Participants. Using the information and records provided by Defendant, Plaintiffs' Counsel prepared a complete analysis of the Representative Plaintiffs' and the Eligible Settlement Participants' damages.

Thereafter, the Parties engaged in several lengthy discussions concerning settlement, the Parties' legal and factual positions, and the Representative Plaintiffs' and Eligible Settlement Participants' alleged damages. On October 11, 2022, the Parties participated in mediation with Carole Katz, Esq., a reputable mediator with extensive experience in wage-hour class and collective actions. During mediation, the Parties discussed, *inter alia*, potential damages, the applicable statute of limitations, and the merits of the case. At that time, the Parties were unable to reach an agreement. However, the Parties agreed to keep the mediation open, and to continue engaging in meaningful dialogue and exploring the possibility of early resolution. After several months of further negotiations, the Parties were able to reach an agreement. The final terms of the settlement are reflected in the attached Exhibit 1.

### C.    The Settlement Terms

If approved, the Settlement will cover Representative Plaintiffs and the Eligible Settlement Participants who elect to participate in the Settlement by signing and returning Claim Form. The Settlement includes a total of approximately 335 Eligible Settlement Participants.

The Maximum Gross Settlement Amount is $500,000, which sum will cover: (a) all payments to the individual Eligible Settlement Participants; (b) service payments to the Named Plaintiffs; (c) Plaintiffs' Counsel's attorneys' fees and expenses; and (d) the Settlement Administrator's expenses of administering the Settlement. (Ex. 1 at ¶ 1.21.)

$307,665.88 of the gross settlement amount (the "Class Settlement Amount") will be divided into individual payments and paid to the Eligible Settlement Participants who opt in by signing and returning the Claim Form ("Final Settlement Class"). The payments to the individual Eligible Settlement Participants are calculated proportionally on each Eligible Settlement Participant's alleged overtime damages between September 29, 2018 and September 2, 2022. (*Id.* at ¶ 1.7, 1.21a.) Additionally, any Eligible Settlement Participant owed less than $50.00 will receive a minimum pay of $50.00 should the opt-in to the Settlement. (*Id.*) The individual settlement payments have been calculated by Plaintiffs' Counsel and approved by Defense Counsel, and can be found at Exhibit A to the Settlement Agreement.

$10,000.00 of the gross settlement amount will be paid to Named Plaintiffs Michael Falline and Anthony Turner ($5,000 each) as service payments for their services as Representative Plaintiffs in this case against their former employer. (*Id.* at ¶ 1.22b.)

Additionally, $166,666.67 (one-third) of the gross settlement amount will be paid to Plaintiffs' Counsel for attorney's fees and $7,224.45 for expenses incurred in this matter. (*Id.* at ¶¶ 1.22c, 1.22d.)

The Settlement will be administered by Analytics Consulting, LLC in the manner described in Section 3 of the Settlement Agreement. To inform Eligible Settlement Participants of the Settlement, the Parties have submitted the proposed Notice of Settlement (Exhibit 1B) and Claim Form (Exhibit 1C). The Notice and Claim Form will be mailed to the Eligible Settlement Participants at their last known home addresses according to records maintained by Defendant, and any updated addresses obtained by the Settlement Administrator. Eligible Settlement Participants who opt-in to the settlement—by signing and returning the Claim Form—will become "Final Settlement Class Members" and will be issued their individual settlement allocation payments. (*Id*. at ¶¶ 1.16, 1.17, 3.5, 3.10.) The individual settlement allocation payments to the Final Settlement Class Members will be allocated 50% to wages and 50% to non-wages. (*Id*. at 3.11.) Any Eligible Settlement Participant who does not opt-in to the Settlement will not be entitled to payment of their individual settlement allocation (which sums shall remain the property of Defendant) and shall not be subject to any release of claims. However, all Final Settlement Class Members will release Defendant from all claims, demands, and causes of action that were or could have been asserted in the Civil Action, including claims for unpaid wages, and/or liquidated damages, interest, attorneys' fees, and expenses, pursuant to the FLSA and any state or local law governing wages or the payment of wages. (*Id*. at ¶ 1.20; Ex. 1C.)

## III.    THE PROPRIETY OF APPROVAL

The proposed Settlement is subject to approval pursuant to § 216(b) of the FLSA. As shown herein, approval is warranted on all scores.

### A.    <u>Standard for Approval</u>

"The 'proper procedure for obtaining court approval of the settlement of FLSA claims is for the parties to present to the court a proposed settlement, upon which the district court may enter

a stipulated judgment only after scrutinizing the settlement for fairness.'" *Duran v. Hershey Co.*, No. 14-cv-01184, 2015 WL 4999511, at *1 (N.D. Cal. Aug. 18, 2015) (quoting *Lee v. The Timberland Co.*, C 07–2367–JF, 2008 WL 2492295, at *2 (N.D. Cal. June 19, 2008). "Compromises of disputed claims are favored by the courts." *Williams v. First Nat'l Bank*, 216 U.S. 582, 595 (1910). "In the class action context in particular, 'there is an overriding public interest in favor of settlement,' because settlement of complex disputes" minimizes the litigation expenses of both parties and also reduces the strain such litigation imposes upon already scarce judicial resources. *Armstrong v. Board of School Directors*, 616 F.2d 305, 313 (7th Cir. 1980) (citation omitted). "In exercising its discretion, the trial court must approve a settlement if it is fair, reasonable and adequate." *Jones v. Nuclear Pharm., Inc.*, 741 F.2d 322, 324 (10th Cir. 1984).

As the Ninth Circuit has not established any particular criteria for approval of FLSA settlement, "district courts within this circuit have looked to the Eleventh Circuit's opinion in *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350 (11th Cir. 1982)." *Zako v. Hamilton Co.*, No. 2:16-cv-166, 2020 WL 406376, *4 (D. Nev. Jan. 24, 2020). "Under *Lynn's Food*, settlement of FLSA claims may be allowed by 'a stipulated judgment entered by a court which has determined that a settlement proposed by an employer and employees, in a suit brought by the employees under the FLSA, is a fair and reasonable resolution of a bona fide dispute over FLSA provisions.'" *Id.* (quoting *Lynn's Food*, 679 F.2d at 1355). "The standard for approval of an FLSA settlement is lower than for a Rule 23 settlement…" *Id.* (citing *Bonilla v. Las Vegas Cigar Co.*, 61 F. Supp. 2d 1129, 1136 (D. Nev. 1999). However, "[i]n evaluating the fairness and reasonableness of a FLSA settlement, "the majority of Rule 23's fairness factors are instructive and relevant." *Id.* (citing *Lewis v. Vision Value, LLC*, No. 1:11-cv-01055, 2012 WL 2930867, *2 (E.D. Cal. July 18, 2012)). "Rule 23's fairness factors include: the strength of the plaintiffs' case; the risk, expense,

complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement." *Id.* (citing *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1375 (9th Cir. 1993) (quoting *Officers for Justice v. Civil Serv. Comm'n of City & Cnty of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982))).

As discussed below, the Settlement meets the standards for approval. As a result, Plaintiffs and Defendant believe that the Settlement should be approved so that notice can be provided to Eligible Settlement Participants.

**B.    The Proposed Settlement Is A Fair, Reasonable, And Adequate Resolution Of A Bona Fide Dispute.**

The Settlement is beneficial to the Plaintiffs and Eligible Settlement Participants in light of the complexities of the case, the disputed factual and legal issues, the recovery obtained, and the risks avoided. First, the Parties vigorously dispute whether the time spent by Plaintiffs is compensable time under the FLSA (and/or under state law). Second, even if the alleged time spent working off-the-clock was compensable, Plaintiffs had a heavy burden of proving that it was not *de minimis*. Plaintiffs argued that they were required to arrive early to go through Defendant's security check points prior to clocking in each day. There are extensive factual disputes concerning the length of time that it took for Plaintiffs and other Correctional Officers and Detention Officers to go through the security check point. Further, Defendant vigorously disputes Plaintiffs' damage model and asserts that collective class certification is improper. Given the bona fide dispute between the Parties, and the relief that will be obtained through the Settlement, the Settlement represents a fair reasonable resolution of the Civil Action and eliminates the risk that the Plaintiffs and Eligible Settlement Participants might otherwise recover nothing.

1.    ***Bona Fide Disputes Exist Concerning the Merits of Plaintiffs' Claims.***

In evaluating a settlement, "[t]here is no precise formula for what constitutes sufficient evidence to enable the court to analyze intelligently the contested questions of fact. It is clear that the court need not possess evidence to decide the merits of the issue, because the compromise is proposed in order to avoid further litigation." Alba Conte & Herbert Newberg, Newberg on Class Actions §11.45 (4th ed. 2002). Here, it is clear that the Parties could reasonably conclude that there are serious disputed questions of law and fact that exist such that they could significantly impact this case if it were further litigated. There are several issues in dispute between the Parties, the outcome of which remains uncertain. First, the Parties disputed whether this case could be maintained as a collective (or class) action. Thus, without this Settlement, the Eligible Settlement Participants may not get notice and may not be entitled to compensation. Second, the Parties disputed whether alleged unpaid work is compensable. Third, there has been a serious disagreement amongst the Parties about whether the time spent by Plaintiff going through the security check point before clocking in was compensable, and if so, whether that time was *de minimis*. And fourth, while Defendant contended that Plaintiffs could not succeed on the merits, even if they could, the Parties also dispute whether the two-year limitations period for non-willful violations or three-year limitations period for willful violations applies under the FLSA, and whether Defendant acted in good faith in paying its employees, including Plaintiffs. After discovery, Defendant could have prevailed on summary judgment with respect to some or all of Plaintiffs' claims. Accordingly, this factor supports settlement approval.

2.    ***The Risk, Expense, Complexity, and Likely Duration of Further Litigation Favors Approval.***

The policy favoring the settlement of class and collective actions and other complex cases applies with particular force here. Employment cases in general, and wage-and-hour collective

actions in particular, are expensive and time-consuming. As discussed in section III.B.1, *supra*, several factual and legal issues are in dispute in this case. If forced to litigate this case further, the Parties would certainly engage in complex, costly and protracted wrangling, and in all probability, it would be years before it was resolved. Many years and significant costs would be required for the Parties to litigate the claims, complete discovery, brief certification motions, brief summary judgment motions, and participate in pretrial proceedings. The decision on summary judgment and/or certification could be appealed to the Ninth Circuit (and possibly beyond), which could take years to complete. Assuming the Parties went to trial and verdict, there is a possibility that the verdict could be reversed. The ultimate resolution of this action on the merits (and in turn, compensation to Eligible Settlement Participants) via trial and appeal is indefinite at best. Accordingly, this factor also supports settlement approval.

### 3.    *The Risk of Maintaining the Action through Trial Favors Approval.*

As discussed in in section III.B.1, *supra*, a bona fide dispute exists as to whether this case could be maintained as a class action or collective action, the outcome is uncertain, and time and expense required in order to reach an ultimate resolution would be substantial. Thus, the risk of maintaining the collective action through trial likewise favors approval.

### 4.    *The Amount Offered in Settlement Favors Approval.*

The Settlement is certainly favorable to Plaintiffs and the Eligible Settlement Participants. An evaluation of the benefits of the Settlement must also be tempered by the recognition that any compromise involves concessions on the part of the Parties. Indeed, the very essence of a settlement agreement is compromise, "a yielding of absolutes and an abandoning of highest hopes." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 624 (9th Cir. 1982) (citation omitted). In fact, Courts within the Ninth Circuit, and elsewhere, have, under appropriate

circumstances, approved settlements in class and collective actions that result in a small percentage of the potential class damages being recovered. *See, In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000); In re Omnivision Techs., Inc., 559 F.Supp.2d 1036, 1042 (N.D. Cal. 2008); Bellinghausen v. Tractor Supply Company, 306 F.R.D. 245, 256 (N.D. Cal. 2015); *Custom LED LLC v. eBay, Inc.*, 2013 WL 6114379, p. 3 (N.D. Cal. 2013).

Here, Plaintiffs' counsel calculated that Plaintiffs and the Eligible Settlement Participants are owed approximately $411,308 in unpaid overtime using an average of 8.38 minutes per shift work that was allegedly off-the-clock and assuming the three-year limitations period applies. Thus, the total settlement amount ($500,000) is approximately 122% of the alleged unpaid overtime damages based on Plaintiffs' counsel's calculation. This factor certainly favors approval.

### 5.    The Extent of Discovery.

The Parties engaged in substantial investigation and informal discovery prior to negotiating the Settlement, including a comprehensive exchange of time and pay records and a complete analysis of the Plaintiffs and Eligible Settlement Participants' alleged damages. All aspects of this case were understood by both sides. Thus, this factor also favors settlement approval.

### 6.    The Experience and Views of Plaintiffs' Counsel.

The Parties' counsel—among whom are attorneys with substantial experience in complex class and collective action litigation—unanimously support this Settlement. Thus, this factor also supports settlement approval.

### 7.    The Reaction of Absent Eligible Settlement Participants.

Unlike a Rule 23 Class Action settlement, each Eligible Settlement Participant has the option of opting into this matter or not. The Eligible Settlement Participants are not bound by the Settlement unless they affirmatively opt-in by completing and submitting the Claim Form. As

such, any members who choose not to participate are free to do so without taking any action on their part. Thus, this factor further supports granting approval.

### C.    The Settlement Distributions Are Fair, Reasonable and Adequate.

All components of the proposed distribution are proper and reasonable, and the Settlement as a whole is fair, reasonable, and adequate for Representative Plaintiffs and the Eligible Settlement Participants.

The proposed Settlement Agreement is fair to the Plaintiffs and Eligible Settlement Participants because it provides for a recovery based upon actual records of the putative collective class, with each Eligible Settlement Participant allocated a separate amount based upon his/her dates of employment. The Settlement allows each Eligible Settlement Participant to receive an amount from the settlement fund that is based upon each individual's proportionate share of the total damages available to all Eligible Settlement Participants in the aggregate, exclusive of attorneys' fees and costs. As part of the Settlement, the Parties also agreed to an "incentive award" for Representative Plaintiffs based on their participation in assisting Counsel in obtaining this Settlement for such a large collective class.

Plaintiff's Counsel calculated the alleged overtime compensation owed to Representative Plaintiffs and the Eligible Settlement Participants by using an average of 8.38 minutes per shift work that was allegedly off-the-clock and adding that amount of time to each shift worked by the Plaintiffs and Eligible Settlement Participants. The 8.38 minute average was derived from an analysis of CoreCivic's Lobby Management System records which showed the time when Correctional Officers and Detention Officers arrived at facilities similar to those in Nevada. That time was then compared to the clock-in time for the Correctional Officers and Detention Officers. Plaintiff's Counsel calculated that, on average, the amount of time was 8.38 minutes prior to

clocking in for the start of the shift. If after adding the 8.38 minutes per shift to the amount worked on the clock produced more than 40 hours for the week, the unpaid overtime wages were then calculated.

Plaintiffs calculated the unpaid overtime wages at approximately $411,308 under the three (3) year statute of limitations. Defendant contends, *inter alia*, that: (a) the alleged unpaid overtime work was not compensable under the FLSA or state law; (b) the actual average time that Plaintiffs and the Eligible Settlement Participants spent in the security screenings was less than 8.38 minutes per shift; and (c) the action would likely be decertified since Plaintiffs would not be able to establish that he and all Eligible Settlement Participants engaged in compensable hours worked while off the clock (or the amount of any such alleged work) using representative evidence. The settlement of $500,000 provides fair and reasonable compensation when considering the risks to both sides. Additionally, any Eligible Settlement Participant owed less than $50.00 will receive a minimum pay of $50.00. Accordingly, the settlement proceeds are fair, reasonable, and adequate.

## D.    **The Attorneys' Fees Are Proper and Reasonable.**

The FLSA provides that a Court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and the costs of the action." 29 U.S.C. § 216(b). Indeed, "[t]he purpose of the FLSA attorney fees provision is to insure effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances." *Flores v. TFI Int'l Inc.*, No. 12-cv-05790-JST, 2019 WL 1715180, at *11 (N.D. Cal. Apr. 17, 2019);(quoting *Fegley v. Higgins*, 19 F.3d 1126, 1134 (6th Cir.1994)"Courts should not place an undue emphasis on the amount of the plaintiff's recovery because an award of attorney fees here 'encourages the vindication of congressionally identified policies and rights." *Fegley,* 19 F.3d 1126, 1134-35.

13

The attorneys' fees requested are reasonable in light of the exceptional benefit achieved for Plaintiffs and the Eligible Settlement Participants. In the instant matter, Counsel undertook representation under a contingent-fee basis.

In *Fegley*, 19 F.3d 1126, cert. denied, 513 U.S. 875 (1994), the Court held that the FLSA's mandatory attorneys' fee provision "insure[s] effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances," and thus "encourage[s] the vindication of congressionally identified policies and rights." *Fegley*, 19 F.3d at 1134 (quoting *United Slate, Tile & Composition Roofers, Damp and Waterproof Workers Ass'n, Local 307 v. G & M Roofing and Sheet Metal Co*., 732 F.2d 495, 502 (6th Cir.1984)).

*Fegley* was followed in *Bessey v. Packerland Plainwell, Inc*. 2007 WL 3173972 (W.D. Mich. 2007), in which the district court approved a one-third attorneys' fee in an FLSA settlement much like the one presented here. Fulfilling *Fegley*'s emphasis on "encourage[ing] the vindication of congressionally identified policies and rights," the *Bessey* court found "the percentage of fund method is the proper method in this case for compensating plaintiffs' counsel. The fact that the damages which could have been claimed by each class member were relatively modest provides a strong reason for adopting the percentage of recovery method, for it rewards counsel for taking on a case which might not otherwise be economically feasible." *Bessey*, 2007 WL 3173972, at *4 (citing *Rawlings v. Prudential Properties, Inc*., 9 F.3d 513, 516 (6th Cir. 1993) (the district court "must make sure that [class] counsel is fairly compensated for the amount of work done as well as for the results achieved" and "the percentage of the fund method more accurately reflects the results achieved"). *Accord, In re Revco Securities Litigation*, Fed. Sec. L. Rptr. ¶ 96,956, at 94,069 (N.D. Ohio 1993) ("'[t]he percentage of the fund approach… provides a fair and equitable means of determining attorney's fees'" because "'the size of a common fund is an objective yardstick by

which the benefit conferred upon the class can be measured'").

In determining the reasonableness of the one-third fee, the *Bessey* court considered the comparative data about class settlements summarized in *Shaw v. Toshiba America Information Systems, Inc*., 91 F. Supp. 2d 942 (E.D. Tex. 2000), discussed in *Bessey*, 2007 WL 3173972, at *4:

> The most complete analysis of fee awards in class actions conducted to date was conducted by the National Economic Research Associates, an economics consulting firm. The data is reported at Frederick C. Dunbar, Todd S. Foster, Vinita M. Juneja, Denise N. Martin, Recent Trends III: What Explains Settlements in Shareholder Class Actions? (NERA, June 1995) (hereinafter "NERA Study"). This data indicates that regardless of size, attorneys' fees average approximately 32% of the settlement.

*Shaw*, 91 F. Supp. 2d at 988 (emphasis added).

The NERA Study relied upon in *Shaw* and *Bessey* showed the average fee to counsel was approximately one-third of the settlement, while the average result achieved for class members was only 7% to 11% of claimed damages. Measured against that standard, the Settlement in the present case is exemplary. The settlement represents approximately 122% of the overtime wages allegedly owed to Plaintiffs and the Eligible Settlement Participants. Even ***after*** deduction of the service award to the Named Plaintiffs, attorneys' fees and costs, the costs of the mediator, and the costs of the settlement administrator, the total recovery for the Eligible Settlement Participants ($307,665.88) equals approximately 75% of their alleged overtime damages.

The attorney's fees provision of the FLSA exists to enable plaintiffs to employ reasonably competent lawyers without cost to themselves if they prevail, and thereby to help ensure enforcement of the substantive provisions of the Act. 29 U.S.C. §216(b). The provision "insure[s] effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances," and thus "encourage[s] the vindication of congressionally identified policies and rights." *Fegley*, 19 F.3d at 1134.

The attorneys' fees requested by Plaintiffs' Counsel should not be altered because counsel efficiently resolved this case early on rather than prolonging the litigation and increasing the potential fees. As the Manual for Complex Litigation recognizes, "one purpose of the percentage method is to encourage early settlements by not penalizing efficient counsel, thus ensuring competent counsel continue to be willing to undertake risky, complex, and novel litigation." Manual for Complex Litigation (4th) § 14.121.

Had the Parties not reached the Settlement, Plaintiffs' Counsel would have vigorously litigated the case without any promise of success and compensation. At every step of the litigation, Defendant could have succeeded. Therefore, Plaintiffs and the Eligible Settlement Participants were at great risk for non-payment. This risk of non-payment strongly supports the amount requested here. Plaintiffs' Counsel consists of attorneys from four different law firms, all of whom have substantial experience litigating wage and hour class and collective actions.  Plaintiffs' Counsel worked diligently in representing Plaintiffs and the Eligible Settlement Participants in the Civil Action. Prior to filing the two cases, Plaintiffs' Counsel performed a significant amount of research and factual investigation of the claims to set forth a factually specific and accurate Complaint for the Court and Defendant. After engaging in informal discovery and preparing a damages model, Plaintiffs' Counsel vigorously negotiated on behalf of Plaintiffs and the Eligible Settlement Participants at mediation and for approximately six months thereafter before ultimately reaching the Settlement. In common funds settlements (like the Settlement in this case), district courts (including this Court) have frequently approved of attorney's fees awards to Plaintiffs' Counsel  in an amount equal to one-third (or even more) of the total settlement amount. *See, e.g., D'Amore v. Caesars Enterprise Services, LLC*, No. 2:18-CV-1990 JCM (VCF), 2020 WL 8613858, *4 (D. Nev. Oct. 28, 2020) (awarding Plaintiffs' counsel 34% of total settlement amount

for attorneys' fees and costs.); *Hernandez v. Dutton Ranch Corp*., No. 19-cv-00817, 2021 WL 5053476, *5 (N.D. Cal. Sept. 10, 2021) ("Plaintiff's fee request of 33% of the settlement or $173,250 is reasonable as the results achieved through settlement were substantial and the amount of fees requested is well within the range of awards routinely upheld in this circuit."); *Hunter v. CC Gaming, LLC*, No. 19-cv-01979, 2020 WL 13444208 (D. Colo. Dec. 16, 2020) ("In situations such as this, where the Proposed Settlement creates a common fund, attorneys' fees of one-third or thereabouts are generally deemed reasonable."); *Brandenburg v. Cousin Vinny's Pizza, LLC*, No. 3:16-cv-516, 2019 WL 6310376, at *5 (S.D. Ohio Nov. 25, 2019) (1/3rd of the total settlement "is a normal fee amount in a wage and hour case."); *Sanders v. MPRI, Inc*., No. 5:08–cv–00345–R (W.D. Okla. July 9, 2009) (approving fees in an FLSA collective action of 38.5% of the total settlement plus litigation costs); *In re Public Service Co. of New Mexico*, No. 91–0536M, 1992 WL 278452 (S.D.Cal.1992) (approving a fee award of 33.4% on a $33 million recovery); *McNeely v. Natl'l Mobile Health Care, LLC*, No. CIV–07–933–M, 2008 WL 4816510, at *15 (W.D. Okla. Oct.27, 2008) (approving fees equal to 33% of total settlement); *Cimarron Pipeline Const., Inc. v. Nat'l Council On Comp. Ins*., Nos. CIV 89–822–T and CIV 89–1186–T, 1993 WL 355466, at *2 (W.D. Okla. June 8, 1993) ("Fees in the range of 30–40% of any amount recovered are common in complex and other cases taken on a contingent fee basis.").

Similarly, Courts have routinely granted Class Counsel's one third fee request in similar class and collective actions. *See, e.g., Ballard v. CoreCivic of Tennessee, LLC*, Case No. Civ. A. 3:20-cv-0418 (M.D. Tenn.); *Jim v. CoreCivic of Tennessee, LLC*, Case No. Civ. A. 1:20-cv-0618 (D. N.M.); *Shumate v. Genesco, Inc., et al.*, Case No. 1:17-cv-03574 (S.D. Ind.); *Klaus v. Humana Pharmacy, Inc*., Case No. 1:19-cv-01025 (S.D. Ohio); *Rosenbohm v. Cellco Partnership*, Case No. 2:17-cv-00731 (S.D. Ohio); *Grayer, et al. v. Kennametal, Inc*., Case No. 1:16-cv-01382 (N.D.

Ohio); *Allen v. Sutherland Global Services*, Case No. 6:17-cv-6059 (W.D.N.Y); *Lawrence v. Platinum Home Helper*, Case No. 1:17-cv-1479 (N.D. Ohio); *Fullerton v. Golden Flake Snack Foods, Inc.*, Case No. 3:17-cv- 00296 (N.D. Florida); *Miller v. Flowers Baking Co. of Ohio*, Case No. 3:17-cv-725 (N.D.NY.); *Caringi v. Relentless Recovery*, Case No. 1:16-cv-2236 (N.D. Ohio); *Tabor v. A Better Alternative to Senior Care, Inc*., Case No. 1:16-cv-1281 (N.D. Ohio*); Castro v. Heart Home Care, LLC*, Case No. 1:16-cv-571 (N.D. Ohio); *Bainbridge v. Medline Industries*, Case No. 5:16-cv00555 (N.D. Ohio); *Terry v. All Hearts Home Health Care*, Case No. 1:16-cv-515 (N.D. Ohio); *Webber v. Nine Energy*, Case No. 4:15-cv-2406 (S.D. Texas); Swiger, et al. v. Utz Quality Foods, Inc., Case No. 1:15-cv-2196 (M.D. Penn); *Houston, et. al. v. Progressive Casualty Insurance Co*., Case No. 1:15-cv-01853 (N.D. Ohio); *Hillebrandt, et al. v. Horizontal Wireline Services, LLC, et al.,* Case No. 2:15-cv-1307 (W.D. Pa); *Rucker v. Quality Blow Molding*, Case No. 1:15-cv-1039 (N.D. Ohio); Green v. H.A.D., Inc., Case No. 2:15-cv-933 (S.D. Ohio); *Douglas, et al. v. J&K Subway, Inc*., Case No. 4:14-cv-2621 (N.D. Ohio); *McPherson v. Horseshoe Cleveland*, Case No. 1:14-cv-02475 (N.D. Ohio); *Smith v. CMHA*, Case No. 1:14-cv-1409 (N.D. Ohio); *Armbruster v. City of Cleveland*, Case No. 1:13-cv-2626 (N.D. Ohio); *Williams v. Beckett Air, Inc*., Case No. 1:12-cv-2796 (N.D. Ohio); *Welch v. Incept Corporation*, Case No. 5:12-cv-1775 (N.D. Ohio); *Malaj v. Gohlke*, Case No. 1:11-cv-1578 (N.D. Ohio); *Campbell v. Judson Services*, Case No. 1:11-cv-906 (N.D. Ohio); *Murphy v. 1-800-Flowers*, Case No. 1:10-cv-1822 (N.D. Ohio); *Miller v. National Enterprise Systems*, Case No. 1:10-cv-1664 (N.D. Ohio); *Osolin v. Turocy & Watson LLP, et al*, Case No. 1:09-cv-2935 (N.D. Ohio); *Kelly v. National Enterprise Systems*, Case No. 1:09-cv-2268 (N.D. Ohio); *McNelley v. Aldi*, Case No. 1:09-cv-1868 (N.D. Ohio); *Rotuna v. West Customer Management Group*, Case No. 4:09-cv-1608 (N.D. Ohio); *Jackson v. Papa John's*, Case No. 1:08-cv-2791 (N.D. Ohio); *Dillworth v. Case Farms*, Case No.

5:08-cv-1694 (N.D. Ohio); *Fincham v. Nestlé Prepared Foods Company*, Case No. 1:08-cv-73 (N.D. Ohio); *McGhee v. Allied Waste Industries*, Case No. 1:07-cv-1110 (N.D. Ohio).Additionally, the Settlement provides for Attorneys' Expense Payment to Plaintiffs' Counsel in the amount of $7,224.45.  All such expenses were incurred out-of-pocket by Plaintiffs' Counsel during the course of the litigation of this Action. Thus, the Attorneys' Expense Payment is also reasonable and should be approved.

E.    <u>The Service Payments to the Representative Plaintiffs are Proper and Reasonable.</u>

In class and collective actions, "[s]ervice awards for representatives 'are intended to compensate class representatives for work done on behalf of the class, to make up for financial and reputational risk undertaken in bringing the action and [ ] to recognize their willingness to act as a private attorney general'…" *Hernandez v. Dutton Ranch Corp.*, No. 19-cv-00817, 2021 WL 5053476, *7 (N.D. Cal. Sept. 10, 2021) (quoting *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009)). Such awards are "typical" in FLSA cases. *Hernandez*, 2021 WL 5053476, *7 "To assess what service award is appropriate, courts balance the 'number of named plaintiffs receiving incentive payments, the proportion of the payments relative to the settlement amount, and the size of each payment.'" *Id.*

Plaintiffs Falline and Turner provided effective services on behalf of the Eligible Settlement Participants serving as the Named Plaintiffs in the Civil Action for nearly two years. They have risked their employment reputation by subjecting themselves to the responsibility of serving as the Named Plaintiffs in a case against their former employer. *See Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 187 (W.D.N.Y. 2005) (incentive awards are "particularly appropriate in the employment context … [where] the plaintiff is often a former or current employee of the defendant, and thus, by lending his name to the litigation, he has, for the benefit of the class as a

whole, undertaken the risk of adverse actions by the employer or co-workers"); *Mejia v. KVK-Tech, Inc*., No. 2:19-cv-4841, 2020 WL 5292074, *3 (E.D. Pa. Sept. 4, 2020) (Plaintiffs' argument that putting one's name on a publicly filed employment rights lawsuit comes with substantial risk to current and future employment is well-taken"); *Guippone v. BH S & B Holdings, LLC*, No. 09 CIV. 01029 CM, 2011 WL 5148650, *7 (S.D.N.Y. Oct. 28, 2011) ("Today, the fact that a plaintiff has filed a federal lawsuit is searchable on the internet and may become known to prospective employers when evaluating the person."); *Parker v. Jekyll & Hyde Ent. Holdings, L.L.C.*, No. 08 Civ. 7670, 2010 WL 532960, *1 (S.D.N.Y. Feb. 9, 2010) ("former employees put in jeopardy their ability to depend on the employer for references in connection with future employment. The enhancement awards provide an incentive to seek enforcement of the law despite these dangers.").

The requested service payments ($5,000 to each of the two Named Plaintiffs) are certainly reasonable and well within the range that courts award in class, collective, and representative actions. *See, e.g., May v. Wynn Las Vegas, LLC*, No. 2:15-cv-02142, 2021 WL 244929, *2 (D.Nev. Jan. 25, 2021) (approving service award of $15,000 to the one named Plaintiff in Rule 23 Class Action that settled for a maximum amount of $898,500.00); *Hernandez v. Dutton Ranch Corp*., No. 19-cv-00817, 2021 WL 5053476, *7 (N.D. Cal. Sept. 10, 2021). (Awarding $14,000 to the two named Plaintiffs ($7,000 each) as service payments in collective action that settled for a gross amount of $525,000, stating "Plaintiffs' requested service awards of $7,000 are reasonable and within the range that courts award in class, collective, and representative actions."); *Ceka v. PBM/CMSI Inc.*, No. 12 Civ. 1711, 2014 WL 6812127, *1 (S.D.N.Y. Dec. 2, 2014) (approving award of $10,000 to named Plaintiff in FLSA action).

F.    **The Parties have Agreed on a Fair and Reasonable Notice Plan to Administer the Settlement.**

The Parties have agreed upon a proposed  Notice (Ex. 1-B), and agree to utilize a neutral

third-party claims administrator (Analytics Consulting, LLC), who specializes in wage and hour class actions. The administrator will be responsible for both disseminating notice and issuing final settlement checks to all Eligible Settlement Participants who opt-in to the Settlement.

**G.**     **The Settlement Should Be Approved.**

The terms of the Settlement have been approved by the Parties and their respective counsel. The Settlement was negotiated at arms' length. The Parties entered into the Settlement Agreement voluntarily and knowingly. The Parties agree that the terms of the Settlement Agreement are reasonable, fair, and just, and they settle all claims in this lawsuit. Again, the Settlement Agreement here was negotiated by attorneys who have been vigorously prosecuting and/or defending this and similar claims for many years. Both sides have had considerable experience in prosecuting, defending, and settling federal and state wage and hour claims previously, and, in this case, were particularly well informed as to the facts and circumstances of the litigation. After the Parties reached an agreement on the Settlement, the Parties engaged in extensive negotiations concerning the specific terms of the Settlement and the scope of the release. The settlement documents ultimately approved and executed by the Parties are the result of very comprehensive discussions, as well as exhaustive and hard-fought negotiations. Ultimately, there can be no question that this Settlement Agreement represents fair value for the Eligible Settlement Participants.

**IV.     CONCLUSION**

For the reasons set forth herein, Plaintiffs respectfully request that the Court enter an Order, substantially as proposed in Exhibit 1D, approving the Settlement as fair and reasonable. Defendant does not oppose this Motion.

/ / /

/ / /

Respectfully submitted,

NILGES DRAHER LLC

*/s/ Hans A. Nilges*
Hans A. Nilges, *Admitted Pro Hac Vice*
hnilges@ohlaborlaw.com
7034 Braucher St., NW, Ste. B
North Canton, OH 44720

HODGES & FOTY, LLP

*/s/ Don J. Foty*
Don J. Foty *Admitted Pro Hac Vice*
4409 Montrose Blvd., Ste. 200
Houston, TX, 77006

THE LAZZARO LAW FIRM, LLC

*/s/ Anthony J. Lazzaro*
Anthony J. Lazzaro, *Admitted Pro Hac Vice*
Matthew S. Grimsley, *Admitted Pro Hac Vice*
The Heritage Building, Ste. 250
34555 Chagrin Blvd.
Moreland Hills, OH 44022

THIERMAN BUCK, LLP

*/s/ Leah L. Jones*
Mark R. Thierman, No. 8285
Joshua D. Buck, No. 12187
Leah L. Jones, No. 13161
Joshua R. Hendrickson, No. 12225
7287 Lakeside Drive
Reno, Nevada 89511

*Attorneys for Plaintiffs and the Putative Class*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on July 7, 2023, the foregoing was sent to all Parties by operation of the Court's electronic filing system. Parties may access the filing through the Court's system.

*/s/ Jennifer Edison-Strekal*
Jennifer Edison- Strekal
An Employee of Thierman Buck, LLP